**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **JOE HAND PROMOTIONS, INC.,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | Civil Action No. 3:17-CV-1312-S (BK) |
| | § | |
| **MICKEY'S SPORTS** | § | |
| **BAR AND GRILL, LLC, et al.,** | § | |
| **Defendants.** | § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to District Judge Scholer's *Order of Reference*, Doc. 17, and 28 U.S.C. § 636(b), *Plaintiff, Joe Hand Promotions, Inc.'s Motion for Final Default Judgment Against Defendants*, Doc. 12, has been referred to the undersigned for a recommended disposition. For the reasons stated herein, Plaintiff's motion should be **GRANTED**.

## I. BACKGROUND

In May 2017, Plaintiff filed its Complaint against Defendants alleging that they, illegally and without authority, received and exhibited the *Ultimate Fighting Championship® 173: Barao vs. Dillashaw* broadcast (the "Broadcast") on May 24, 2014, at Mickey's Sports Bar and Grill (the "Establishment"), without paying the proper licensing fee. Doc. 1 at 1-4. Specifically, Plaintiff alleges violations of the Federal Communications Act of 1934 ("FCA") and seeks damages, as well as its reasonable attorneys' fees and court costs. Doc. 1 at 5-6. Defendants were served with summons and complaint on June 1, 2017 and July 20, 2017. Doc. 7; Doc. 8. On October 11, 2017, Plaintiff filed its *Request to Enter Default Against Defendants*. Doc. 9. The Clerk entered default the same day. Doc. 10. By the motion *sub judice*, Plaintiff now moves for final default judgment. Doc. 12.

## II. LEGAL STANDARD

Conditions governing the entry of default and default judgment are set forth in Rule 55 of the Federal Rules of Civil Procedure.  The entry of a default judgment is the culmination of three events: (1) default, which occurs when a defendant has failed to plead or otherwise timely respond to the complaint; (2) entry of default by the clerk of court when such default is established by affidavit or otherwise; and (3) application by plaintiff to the Court for a default judgment after the entry of default.  FED. R. CIV. P. 55(a).  All three requisites have been met in this case.  Standing alone, however, a defendant's default does not entitle a plaintiff to a default judgment, as the decision rests squarely within the district court's discretion.  *Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001) (per curiam) ("[D]efault judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations.") (citation and internal quotation marks omitted).

In determining whether a default judgment should be entered against a defendant, the court considers (1) whether the entry of default judgment is procedurally warranted; (2) whether there is a sufficient basis in the pleadings for the judgment; and (3) the relief, if any, to which the plaintiff is entitled.  *United States v. 1998 Freightliner*, 548 F. Supp. 2d 381, 384 (W.D. Tex. 2008).  In determining if default judgment is procedurally warranted, courts consider the factors set forth in *Lindsey v. Prive Corp.*, 161 F.3d 886 (5th Cir. 1998), to-wit: whether (1) material issues of fact exist; (2) there has been substantial prejudice; (3) the grounds for default are clearly established; (4) the default was caused by a good faith mistake or excusable neglect; (5) a default judgment would be unduly harsh; and (6) the court would think itself obliged to set aside default on the defendant's motion.  *Id.* at 893.

2

A defaulting defendant is deemed to admit all well-pleaded facts in the plaintiff's complaint, but not facts that are not well pled or conclusions of law. *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). Typically, damages are not awarded without a hearing or a demonstration by detailed affidavits establishing the necessary facts. *See United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979) (per curiam). However, if the amount of damages can be determined with mathematical calculation by reference to the pleadings and supporting documents, a hearing is unnecessary. *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993).

### III. ANALYSIS

### A.    Default if procedurally warranted

On balance, the *Lindsey* factors weigh in favor of granting a default judgment in this case. First, given Defendants' failure to answer the allegations, no material facts are in dispute. *Lindsey*, 161 F.3d at 893. Second, Defendants' "failure to respond threatens to bring the adversary process to a halt, effectively prejudicing Plaintiff's interests." *Gandy v. Lynx Credit*, No. 3:14-CV-0369-B, 2014 WL 6805501, at *2 (N.D. Tex. Dec. 3, 2014) (Boyle, J.) (citing *Lindsey*, 161 F.3d at 893). Third, Defendants were properly served and have had approximately ten months to file an answer or explain their reticence to do so; thus, the grounds for default are clearly established. *Cf. Elite v. The KNR Grp.*, 216 F.3d 1080 (Table), 2000 WL 729378, at *1 (5th Cir. May 19, 2000) (per curiam) (holding default judgment to be inappropriate where defendant sent a letter to the court explaining why he failed to appear). Fourth, there is no evidence before the Court to indicate that Defendants' silence is the result of a good faith mistake or excusable neglect. Fifth, Plaintiff only seeks the relief to which it is entitled under the FCA, mitigating the harshness of a default judgment. *Cf. Henson v. Young 3, LLC*, No. 3:14-

CV-905-B, 2015 WL 356890, at *2 (N.D. Tex. Jan. 28, 2015) (Boyle, J.) (holding that the harshness of a default judgment was mitigated by plaintiff only seeking the relief she was entitled under the FSLA).  Finally, the Court is not aware of any facts that would give rise to "good cause" to set aside the default if challenged by Defendants.  Thus, default judgment is procedurally warranted.

**B.    There is sufficient basis for judgment in the pleadings**

Plaintiff's well-pleaded allegations support the entry of a default judgment against Defendants for violating section 605 of the FCA, 47 U.S.C. § 605.[1]  A person violates section 605 when he "intercept[s] any radio communication . . . or receive[s] or assist[s] in receiving any interstate or foreign communication by radio and use[s] such communication . . . for his own benefit or for the benefit of another not entitled thereto." 47 U.S.C. § 605(a).  Here, the pleadings and evidence attached to the motion *sub judice* establish the Broadcast was transmitted via coded or scrambled satellite signal, and that Defendants intercepted the Broadcast without authorization and exhibited it to patrons at the Establishment for their own commercial benefit. Doc. 1 at 3-4; Doc. 13-2 at 2-6.  Plaintiff has therefore established a viable claim for relief under section 605 of the FCA.

## IV. RELIEF REQUESTED

The relief requested in the complaint limits the relief available by default judgment.  FED. R. CIV. P. 54(c) ("[A] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings.").  In the instant case, Plaintiff requests nothing more than what is

---

[1] Although Plaintiff alternatively alleged a violation of section 553 of the FCA in its Complaint, it moves only for default judgment as to its claim under section 605.  Consequently, the Court considers only whether there is a sufficient basis in the pleadings for judgment with respect to Plaintiff's claim under section 605.

demanded by its pleadings; accordingly, the Court is next called upon to "determine whether the relief requested is appropriate based on the governing law." *Chevron Intellectual Prop., L.L.C. v. Allen*, No. 7:08-CV-98-O, 2009 WL 2596610, at *3 (N.D. Tex. Aug. 24, 2009) (O'Connor, J.).

## A.    Damages

Upon establishing a violation of section 605, the aggrieved party may elect to receive either actual damages or statutory damages. 47 U.S.C. § 605(e)(3)(C)(i). Statutory damages may be awarded in an amount between $1,000.00 and $10,000.00 for each violation of subsection (a) of section 605. *Id.* at § 605(e)(3)(C)(i)(II). If the Court finds that a violation was committed "willfully and for purposes of direct or indirect commercial advantage or private financial gain," it may increase the damages awarded by an amount of not more than $100,000.00. *Id.* § 605(e)(3)(C)(ii).

### 1. Statutory Damages

Plaintiff seeks statutory damages under subsection (C)(i) of the FCA in the amount of $10,000.00, the maximum amount available. Doc. 12 at 13. To support its damages claim, Plaintiff submits the affidavit of its President, Joe Hand, Jr., who avers that Plaintiff suffered losses, including the $1,200.00 sublicensing fee Defendants should have paid. Mr. Hand also notes that continued piracy threatens Plaintiff's ability to retain customers, as establishments that pay the sublicensing fee are unable to compete with establishments that do not. *See* Doc. 13-2 at 1-7. Additionally, Plaintiff states that Defendants' actions harmed its goodwill, reputation, and right and ability to control and receive payment for the Broadcast, thereby threatening its commercial viability. Doc. 12 at 16.

In assessing statutory damages under section 605, courts consider various factors, including the number of patrons in the establishment at the time of the violation and the licensing

5

fee. *Joe Hand Promotions, Inc. v. 2 Tacos Bar & Grill, LLC*, No.3:16-CV-1889-M, 2017 WL 373478, at *3 (N.D. Tex. Jan. 26, 2017) (Lynn, C.J.). However, "to adequately deter piracy, the cost of piracy must be significantly higher than the cost of buying a license." *Id.* (quoting *J & J Sports Prods., Inc. v. Beck*, No. L-13-57, 2013 WL 5592333, at *2 (S.D. Tex. Oct. 9, 2013)).

By her sworn affidavit, Plaintiff's investigator avers that the Establishment has a capacity of approximately 120 people and that between fifteen and sixteen patrons were present during the violation. Doc. 13-5 at 1-2. Thus, according to Plaintiff's Rate Card, Defendants would have had to pay a licensing fee of approximately $1,200.00 to legally exhibit the Broadcast. Doc. 13-4 at 1. Under such circumstances, the Court finds that an award of $5,000.00 in statutory damages is reasonable. *See, e.g.*, *2 Tacos*, 2017 WL 373478, at *4 (finding that an award of $5,000.00 in statutory damages was reasonable, rather than the $10,000 plaintiff requested, where there were 70 patrons in the establishment at the time of the violation and the licensing fee would have been $1,300.00); *Joe Hand Promotions, Inc. v. Alima*, No. 3:13-CV-0889-B, 2014 WL 1632158, at *4 (N.D. Tex. Apr. 22, 2014) (Boyle, J.) (finding that an award of $5,000.00 in statutory damages was reasonable, rather than the $10,000 statutory maximum requested, where there were 85 to 125 patrons in the establishment at the time of the violation and the licensing fee would have been between $1,100.00 and $1,200.00).

### 2. Additional Damages

Plaintiff seeks additional damages under subsection (C)(ii) of the FCA in the amount of $50,000.00 (five times its requested statutory damages award of $10,000.00). Doc. 12 at 17-19. Upon review, the Court finds that the allegations in Plaintiff's Complaint demonstrate that Defendants illegal conduct was willful and done for the purposes of their direct or indirect commercial advantage or private financial gain. 47 U.S.C. § 605(e)(3)(C)(ii); *see Time Warner*

*Cable v. Googies Luncheonette, Inc.*, 77 F. Supp. 2d 485, 490 (S.D. N.Y. 1999) ("There can be no doubt that the violations were willful and committed for purposes of commercial advantage and private gain.  Signals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems.").  Accordingly, an award of additional damages under subsection (C)(ii) is warranted.

When faced with a defendant who broadcasts an event willfully and for his own commercial benefit, the amount of additional damages is typically determined by applying a multiplier between three and five to the amount of statutory damages awarded.  *Alima*, 2014 WL 1632158, at *5; *see also Time Warner Cable of New York City v. Googies Luncheonette, Inc.*, 77 F. Supp. 2d 485, 491 (S.D. N.Y. 1999) (applying eight times multiplier where establishment had record of unlawfully appropriating property).  Application of a five times multiplier is warranted for more egregious conduct, e.g., charging cover or advertising the unlicensed broadcast.  *See, e.g.*, *Kingvision Pay-Per-View, Ltd. v. Scott E's Pub, Inc.*, 146 F. Supp. 2d 955, 961 (E.D. Wisc. 2001) (applying five times multiplier where defendant advertised the broadcast, charged a cover, and showed the broadcast on five television monitors).

Under the circumstances alleged here, Plaintiff's request for a five times multiplier is not reasonable.  Plaintiff does not allege that Defendants charged a cover, advertised the Broadcast, or that they are repeat offenders.  Additionally, while the Broadcast was shown on thirteen television monitors, it was viewed by only fifteen to sixteen patrons.  Doc. 13-5 at 1-2.  Under similar circumstances, a three times multiplier has been found reasonable.  *See, e.g.*, *J & J Sports Productions, Inc. v. Enola Invs. LLC*, No. 3:15-CV-1973-B, 2016 WL 1161802, at *5-6 (N.D. Tex. Mar. 24, 2016) (Boyle, J.) (applying three times multiplier where defendants did not charge cover or advertise the broadcast and the broadcast was shown on three television monitors to

7

approximately 30 patrons); *Entm't by J & J, Inc. v. Al-Waha Enters., Inc.*, 219 F. Supp. 2d 769, 775-77 (S.D. Tex. 2002) (applying three times multiplier where there was no evidence that defendant charged cover or advertised the broadcast, and the broadcast was shown on five television monitors to 75 patrons). Thus, a three times multiplier should be applied in this case. The Court determines that such damages are ascertainable from the Complaint and the record and recommends an award to Plaintiff of $15,000.00 in additional damages. Accordingly, Plaintiff is entitled to, and should be awarded total damages in the amount of $20,000.00.

### 3. Attorneys' Fees and Costs

The FCA requires courts to "direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails." 47 U.S.C. § 605(e)(3)(B)(iii).

For the prosecution of this case through final default judgment, Plaintiff requests attorneys' fees in the amount of $1,675.00 (6.7 hours at a rate of $250.00 per hour) and costs in the amount of $625.00 (including the $400.00 filing fee and $225.00 for process serving fees). Doc. 13-6 at 2-3; Doc. 13-7 at 1-2. Plaintiff also seeks anticipatory attorneys' fees in the event post-trial of appellate services are required. Doc. 13-6 at 3.

> In the Fifth Circuit,
>
> The determination of a fees award is a two-step process. First the court calculates the "lodestar" which is equal to the number of hours reasonably expended multiplied by the prevailing hourly rate in the community for similar work. The court should exclude all time that is excessive, duplicative, or inadequately documented. Once the lodestar amount is calculated, the court can adjust it based on the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).

*Smith v. Acevedo*, 478 F. App'x 116, 124 (5th Cir. 2012) (per curiam) (quoting *Jimenez v. Wood Cty., Tex.*, 621 F.3d 372, 379-80 (5th Cir. 2010)). The *Johnson* factors are (1) time and labor required for the litigation; (2) novelty and difficulty of the questions presented; (3) skills required

to perform the legal services properly; (4) preclusion of other employment; (5) customary fee; (6) whether the fee is fixed of contingent; (7) time limitations imposed by the client or circumstances; (8) amount involved and the result obtained; (9) experience, reputation, and ability of the attorneys; (10) "undesirability" of the case; (11) nature and length of the professional relationship with client; and (12) awards in similar cases. 488 F.2d at 717-19.

In support Plaintiff offers the affidavit of its attorney, Jamie King. *See* Doc. 13-6. Ms. King has been licensed by the State of Texas since 2004 and has handled, or is in the process of handling, over 100 anti-piracy cases. Doc. 13-6 at 1-2. This Court has previously awarded Ms. King fees at an hourly rate of $250.00, which is the rate she requests here, in other similar anti-piracy cases. *See, e.g.*, *Alima*, 2014 WL 1632158, at *5-6. In light of Ms. King's ability, competence, and experience, the Court also finds that this rate is reasonable. Ms. King also attaches time records setting forth the number of hours expended (6.7) and a description of the work performed. Doc. 13-6 at 2. Based on a review of these records, the undersigned's experience in determining reasonable attorneys' fees based on time expended, and the fee awards in similar cases, the Court finds that 6.7 hours were reasonable and necessary to prosecute this case. Accordingly, it is recommended that Plaintiff's counsel be awarded attorneys' fees in the amount of $1,675.00. However, as there is no indication that post-trial or appellate work will be necessary, Plaintiff should not be awarded anticipatory attorneys' fees. *See Innovative Sports Mgmt., Inc. v. Perez*, No. 3:13-CV-1328-L, 2014 WL 1095140, at *3 (N.D. Tex. Mar. 20, 2014) (Lindsay, J.) ("The court believes that an award of attorney's fees should be based on time expended, not some yet-to-occur event. Moreover, federal courts rarely award attorney's fees for matters that have not occurred"). Should that change, Plaintiff can move for additional fees.

The Court further recommends that Plaintiff be awarded its reasonable costs in the amount of $625.00, which reflects the $400.00 filing fee and $225.00 for process-serving fees. Doc. 13-6 at 3; Doc. 13-7 at 1-2.

## V. CONCLUSION

*Plaintiff, Joe Hand Promotions, Inc.'s Motion for Final Default Judgment Against Defendants*, Doc. 12, should be **GRANTED**.  Default judgment should be entered against Defendants, jointly and severally, and in favor of Plaintiff in the total amount of $22,300.00 (representing $20,000.00 in damages; $1,675.00 in attorneys' fees; and $625.00 in court costs), to bear interest at the applicable federal legal rate, from the date of entry of the judgment until it is paid in full.

**SO RECOMMENDED** on May 8, 2018.

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## <u>NOTICE OF RIGHT TO APPEAL/OBJECT</u>

A copy of this report and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  To be specific, an objection must identify the finding or recommendation to which objection is made, state the basis for the objection, and indicate the place in the magistrate judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from 10 to 14 days).

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

11